TRINA A. HIGGINS, United States Attorney (#7349)
TODD C. BOUTON, Assistant United States Attorney (#17800)
SACHIKO JEPSON, Special Assistant United States Attorney (#17077)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
todd.bouton@usdoj.gov; sachiko.jepson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARTER LANE LUCAS,<br><br>Defendant. | Case No. 2:23-cr-00405 DBB<br><br>UNITED STATES' MOTION IN LIMINE NO. 1: TO PRECLUDE DEFENDANT FROM RAISING SUBSEQUENT CHANGES TO CRIMINAL HISTORY QUESTIONS ON LOAN APPLICATIONS<br><br>Judge David Barlow |
|---|---|

**UNITED STATES' MOTION IN LMINE NO. 1**

Pursuant to Fed. R. Evid. 401-403, the United States files this Motion in Limine No. 1 to preclude Mr. Lucas and his counsel from raising or referencing any evidence or argument regarding changes that were made to disqualifying criminal history questions on Paycheck Protection Loan ("PPP Loan") and Economic Injury Disaster Loan ("EIDL Loan") applications *after* Mr. Lucas submitted his PPP Loan and EIDL Loan applications on or about April 3, 2020.

*\*In accordance with the Court's Stock Criminal Pretrial Order, the United States has limited its Memorandum of law in Support of this motion in limine to 3 pages.\**

## MEMORANDUM OF LAW IN SUPPORT OF USA'S MOTION IN LIMINE NO. 1

### 1. INTRODUCTION

This is a COVID-fraud case set for trial on December 2, 2024. The defendant, Carter Lane Lucas, is charged with three counts of wire fraud committed during the COVID-19 pandemic. The charges relate to Mr. Lucas's fraudulent submission of a Paycheck Protection Program Loan ("PPP Loan") application, an Economic Injury Disaster Loan ("EIDL Loan") application, and a later request for an increase of his EIDL Loan amount. (ECF 38 ¶¶ 1-39). In both of the initial loan applications, the United States alleges that Mr. Lucas fraudulently misrepresented his criminal history to qualify for the loans. The United States further alleges that Mr. Lucas then later fraudulently recertified his original EIDL Loan certifications to obtain an EIDL Loan modification.

Defense counsel has indicated that they may seek to raise at trial the fact that, *after* Mr. Lucas submitted PPP- and EIDL Loan applications (in which he falsely misrepresented his criminal history), the Small Business Administration ("SBA") made changes to the disqualifying criminal history questions, that Mr. Lucas had answered (falsely), which eventually would not have disqualified him from obtaining the loans (had he waited until later to apply for the loans). (*See* Exhibits 1-2) (showing changes to criminal history questions over time).

However, at trial, SBA witnesses will testify that the criminal history questions in effect at the time each version of the PPP- and EIDL-Loan applications was in effect were deliberately calculated, drafted, and approved to set the boundaries of who qualified for a loan. The borrowers who answered "Yes" to disqualifying criminal history questions would not receive a loan.[1]

Therefore, Mr. Lucas and his counsel should be precluded from introducing evidence or argument regarding the later changes made to the disqualifying criminal history questions on PPP-

---

[1] After the first change to EIDL loan criminal history question "c", the SBA reached out to applicants who answered "yes" to the question to see if they would qualify under the new standard. Lucas still would not have qualified.

and EIDL loan applications that were made *after* Mr. Lucas submitted his loan applications. Fed. R. Evid. 401-403. Allowing them to do so could unfairly prejudice and confuse or mislead the jury into improperly thinking that the disqualifying criminal history questions were not material when Mr. Lucas submitted his fraudulent applications. Once rung, this bell could not be unrung.

2. **AT TRIAL, MR. LUCAS SHOULD BE PRECLUDED FROM RAISING THE CHANGES TO THE DISQUALIFYING CRIMINAL HISTORY QUESTIONS.**

Defendants should be precluded from raising improper legal defenses so as not to confuse or prejudice the jury or to invite jury nullification. Fed. R. Evid. 402, 403. Wire fraud charges require a showing that "the scheme [at issue] employed false or fraudulent pretenses, representations, or promises that were material." 10th Cir. Crim. Pattern Jury Instr'n No. 2.57. A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed. *Id.*; *U.S. v. Lawerence*, 405 F.3d 888, 899 (10th Cir. 2005) (defining materiality for purposes of wire fraud in similar fashion).

Here, the evidence will show that, as of April 3, 2020, Mr. Lucas had been convicted of at least 10 non-traffic misdemeanors and 8 felonies. His most recent felony conviction was on March 10, 2016. But on April 3, 2020, Mr. Lucas answered "no" to the following criminal history questions on a PPP Loan application (for $17,000) and an EIDL Loan application (for $35,000):

> 6. ***Within the last five years***, ***for any felony***, has . . . the owner of the Applicant been 1) convicted, [or] 2) plead guilty . . . ? (Exs. 1, 1-1) (emphasis added).
>
> c. ***For any criminal offense - other than a minor vehicle violation - have you ever been convicted***, plead guilty . . . or been placed on any form or parole or probation? (Ex. 2 [3/27/20 version]) (emphasis added).

Then on or about July 31, 2021, Mr. Lucas signed an Amended Loan Authorization and Agreement to obtain a $129,900 increase for his EIDL Loan wherein, he falsely certified that:

> *All representations in the Borrower's [original] loan application* (including all supplementary submissions) *are true, correct and complete* and are offered to induce SBA to make this loan. (Ex. 3 at 5) (emphasis added).

3

When Mr. Lucas submitted his loan applications, had he (honestly) answered "Yes" to either of the identified criminal history questions, neither loan would have been approved. In fact, the PPP Loan application specifically stated above the relevant criminal history question (No. 6) that "*If Questions (5) or (6) are answered "yes," the loan will not be approved.*" (Ex. 1). Even if Mr. Lucas had answered "yes" to criminal history question "c." on his EIDL loan application on April 3, 2020, he still would not have qualified under the more lenient standard implemented on April 27, 2020, which still barred applicants convicted of any felony within the last five years.

The SBA historically screened loan applicants for character and crafted criminal history questions that disqualified certain applicants. In fact, the relevant COVID-19 EIDL Loan criminal history question (effective April 3, 2020) had even been used before the pandemic to screen applicants for other EIDL Loans. It was not a new question. Over time, the criminal history questions changed in response to pressures from lobbyists and politicians who sought to expand the programs to include more persons with different levels of criminal history. But, at each stage, the then-current criminal history question(s) determined who did or did not qualify for a loan. And at every stage, it was a requirement to answer application questions honestly.

3. **CONCLUSION**

Because the only versions of the criminal history questions that matter are the ones Mr. Lucas answered, the Court should preclude the defense from raising any changes to the questions.

RESPECTFULLY SUBMITTED October 9, 2024

        TRINA A. HIGGINS
        United States Attorney

        */s/ Todd C. Bouton*
        TODD C. BOUTON
        Assistant United States Attorney