TRINA A. HIGGINS, United States Attorney (#7349)
TODD C. BOUTON, Assistant United States Attorney (#17800)
SACHIKO J. JEPSON, Special Assistant United States Attorney (#17077)
Attorneys for the United States of America
111 South Main Street, Suite 1800 | Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CARTER LANE LUCAS, <br><br> Defendant. | Case No. 2:23-cr-00405 DBB <br><br> UNITED STATES' NOTICE OF INTENT TO INTRODUCE EVIDENCE OF DEFENDANT'S CRIMINAL HISTORY INTRINSIC TO THE CRIMES CHARGED OR, ALTERNATIVELY, TO INTRODUCE THE EVIDENCE UNDER FRE 404(b) <br><br> Judge David Barlow |

1. **INTRODUCTION**

This is a case about a defendant (Carter Lane Lucas) who lied about his criminal history on Paycheck Protection Program (PPP)- and Economic Injury Disaster Loan (EIDL Loan) applications to obtain (fraudulently) about $182,800 in COVID-19-relief loans. Based on the nature of the wire fraud charges against Mr. Lucas, the number and nature of his multiple pre-loan-application criminal misdemeanor and felony convictions is directly relevant because the charges turn on whether he intentionally misrepresented his criminal history when submitting the PPP- and EIDL-Loan applications and related documents that required him to answer screening and disqualifying criminal history questions and to certify the truthfulness and accuracy of his answers.

/ / /

In federal court, the jury has the right to hear and "evaluate *all* of the circumstances under which the defendant acted."[1] Therefore, as long as (a) the proffered evidence is relevant under Rule 402, and (b) the proffered evidence's probative value is not substantially outweighed by any *unfairly* prejudicial effect under Rule 403, the jury is entitled to hear, from start to finish, the full context of the defendant's criminal acts. This hornbook principle of American jurisprudence is often referenced in shorthand as "*res gestae* evidence" or "things done."[2]

Therefore, the United States serves notice that it intends to introduce, as part of its case-in-chief, intrinsic conduct by the defendant Carter Lane Lucas—namely the number, timing, and non-minor-vehicular nature of his misdemeanor and felony convictions that predated his submission of the loan applications at issue in this case.[3]

Alternatively, if the Court rules the evidence at issue is extrinsic, the United States also serves notice, pursuant to Fed. R. Evid. 404(b), that it intends to offer, as part of its case-in-chief, this same evidence of other crimes, wrongs, or acts of the defendant. This evidence shows Mr. Lucas's, knowledge, intent, identity (pattern), and absence of mistake or accident in completing and submitting the fraudulent loan applications and related certifications.

/ / /

/ / /

/ / /

---

1 *United States v. Smith*, 930 F.2d 1081, 1087 (5th Cir.1991) (emphasis added).

2 *See United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (evidence that is "part and parcel of the proof of the offense charged in the indictment.").

3 As shown below, the fact that none of Mr. Lucas's identified past criminal convictions could be considered to have been "minor vehicle violations" is relevant to the criminal history question he was asked on his April 3, 2020 EIDL-Loan application, which excluded minor vehicle violations from the criminal history inquiry.

2. **FACTUAL BACKGROUND**

    **2.1    This is a COVID-fraud case involving allegations that Mr. Lucas fraudulently obtained over $182,800 in PPP- and EIDL-Loan funds.**

This is a COVID-fraud case set for trial on December 2, 2024. The defendant, Carter Lane Lucas, is charged with three counts of wire fraud committed during the COVID-19 pandemic. The charges relate to Mr. Lucas's fraudulent submission of a PPP Loan application, an EIDL Loan application, and a later request for an increase of his EIDL Loan amount. (ECF 38 ¶¶ 1-39). In both the initial loan applications, Mr. Lucas fraudulently misrepresented his criminal history to qualify for the loans. Mr. Lucas then later fraudulently recertified his original EIDL Loan certifications to obtain an EIDL Loan modification (or increase in the loan).

In the Tenth Circuit, wire fraud charges require a showing that "the scheme [at issue] employed false or fraudulent pretenses, representations, or promises that were material." 10th Cir. Crim. Pattern Jury Instr'n No. 2.57. A false statement is considered to be "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed. *Id.*; *U.S. v. Lawerence*, 405 F.3d 888, 899 (10th Cir. 2005) (defining materiality for purposes of wire fraud in similar fashion as the cited jury instruction).

Here, the evidence will show that, as of April 3, 2020, Mr. Lucas had been convicted of at least 8 felonies and 12 misdemeanors—none of which were minor vehicle violations. His most recent felony conviction was on March 10, 2016. But on April 3, 2020, Mr. Lucas answered "no" to the following criminal history questions on a PPP Loan application (for $17,000) and an EIDL Loan application (for $35,000):

    6. ***Within the last five years***, ***for any felony***, has . . . the owner of the Applicant been 1) convicted, [or] 2) plead guilty . . . ?

(Exs. 1, 1-1) (emphasis added).

> c. **For any criminal offense - other than a minor vehicle violation - have you ever been convicted**, plead guilty . . . or been placed on any form of parole or probation?

(Ex. 2 [3/27/20 version]) (emphasis added).

Then on or about July 31, 2021, Mr. Lucas signed an Amended Loan Authorization and Agreement to obtain a $129,900 increase for his EIDL Loan wherein, he falsely certified that:

> *All representations in the Borrower's [original] loan application* (including all supplementary submissions) *are true, correct and complete* and are offered to induce SBA to make this loan.

(Ex. 3 at 5) (emphasis added).

When Mr. Lucas submitted his loan applications, had he (honestly) answered "Yes" to either of the identified criminal history questions (instead of "No"), neither loan would have been approved. In fact, the PPP Loan application specifically stated above the relevant criminal history question (No. 6) that "*If Questions (5) or (6) are answered "yes," the loan will not be approved.*" (Ex. 1). If Mr. Lucas had answered "yes" to criminal history question "c." on his EIDL loan application on April 3, 2020, up until April 27, 2020, the SBA likely would have followed up with him to ask whether he had either (a) ever been convicted of a felony at any time previously, or (b) been convicted of a misdemeanor within the last 10 years. Given his criminal history, during this entire time period, Mr. Lucas would have been denied the EIDL Loan.[4] In fact, Mr. Lucas still would not have qualified under the more lenient standard for obtaining an EIDL Loan that the SBA implemented on April 27, 2020. This more lenient, later-revised standard still barred

---

4  Before April 3, 2020, Mr. Lucas had been convicted of 8 felonies (over time) and of at least 7 misdemeanors within 10 years before he submitted his April 3, 2020 EIDL Loan application. (*See* Chart in Section 3).

applicants from receiving an EIDL Loan if they had been convicted of any felony within the last five years—which Mr. Lucas had been, on March 10, 2016, just 4 years and 1 month prior.

By lying about his criminal history on his loan applications, Mr. Lucas nevertheless obtained approximately $182,800 in PPP- and EIDL-Loan funds that he was not entitled to.

### 2.2 In approving Mr. Lucas's PPP- and EIDL-Loan applications, the SBA relied on Mr. Lucas's misrepresentations about his criminal history.

The SBA historically screened loan applicants for character and crafted criminal history questions that disqualified certain applicants. In fact, the relevant COVID-19 EIDL Loan criminal history question (effective April 3, 2020) had even been used before the pandemic to screen applicants for other EIDL Loans. It was not a new question. Over time, the criminal history questions changed in response to pressures from lobbyists and politicians who sought to expand the programs to include more persons with different levels of criminal history. But, at each stage, the then-current criminal history question(s) determined who did or did not qualify for a loan. And at every stage, it was a requirement to answer application questions honestly.

The SBA relied on Mr. Lucas's (false) representations regarding his criminal history when the SBA approved his loan applications and his EIDL-Loan modification request.

### 3. THE GOVERNMENT'S ANTICIPATED INTRINSIC AND FRE 404(b) EVIDENCE REGARDING THE DEFENDANT'S PRIOR CRIMINAL HISTORY

The United States intends to offer in its case-in-chief the following intrinsic evidence, or in the alternative, to introduce the evidence at trial pursuant to Fed. R. Evid. 404(b):

**Before April 3, 2020, Mr. Lucas was convicted of at least eight (8) felonies and twelve (12) misdemeanors—none of which was a minor vehicle violation—as indicated below:**

/ / /

| CASE | DATE | CONVICTION | MINOR VEHICLE VIOLATION? |
|---|---|---|---|
| 1 | September 26, 1994 | 1 Misdemeanor | No |
| 2 | April 13, 2004 | 1 Misdemeanor | No |
| 3 | November 16, 2006 | 2 Felonies | No |
| 2 | February 5, 2007 | 2 Misdemeanors | No |
| 3 | February 5, 2007 | 1 Misdemeanor | No |
| 4 | March 18, 2008 | 2 Felonies | No |
| 5 | April 30, 2010 | 1 Felony | No |
| 6 | August 15, 2012 | 1 Misdemeanor | No |
| 7 | September 17, 2012 | 1 Misdemeanor | No |
| 8 | November 25, 2013 | 2 Misdemeanors | No |
| 9 | April 21, 2014 | 1 Felony | No |
| 10 | April 28, 2014 | 1 Felony | No |
| 11 | May 13, 2014 | 2 Misdemeanors | No |
| 12 | March 10, 2016 | 1 Misdemeanor | No |
| 13 | March 10, 2016 | 1 Felony | No |

*To avoid any unnecessary prejudice to Mr. Lucas, the United States does ***not*** intend to introduce at trial any details regarding the nature of Mr. Lucas's criminal convictions—other than: (1) the dates of the convictions, (2) whether they were misdemeanor or felony convictions, and (3) that the convictions were not minor vehicle violations. Any additional information regarding any of the convictions would only be introduced at trial under Fed. R. Evid. 609, where appropriate.

4. **LEGAL ARGUMENT**

    **4.1   Mr. Lucas's prior bad acts (namely, his pre-loan-application criminal convictions) are intrinsic to the charged wire fraud because these convictions provide evidentiary context in which he (the defendant) acted.**

"[E]vidence essential to the context of the crime" is intrinsic and "does not fall under the other crimes limitation of Rule 404(b)."[5] "[I]ntrinsic evidence is that which is 'directly connected to the factual circumstances of the crime and provides contextual or background information to the jury.'"[6] Stated another way, "Other act evidence is *intrinsic* when the evidence of the other act and the evidence of the crime charged are inextricably intertwined . . . or the other acts were necessary preliminaries to the crime charged."[7] Thus, if evidence is "part and parcel of the proof of the offense charged in the indictment," Rule 404(b) cannot be the basis for its exclusion.[8] Other-act evidence is admissible even if it is not offered to establish an element of the charged offense.[9]

One of *the most* challenging things to prove beyond a reasonable doubt in a criminal case is a defendant's intent.[10] The charges in this case require the government to establish specific intent to defraud. This means that the government must establish beyond a reasonable doubt what was happening inside the defendant's head when the wire fraud took place—namely, that Mr. Lucas intentionally misrepresented his criminal history on his loan documents. To give the jury a

---

5 *United States v. Parker*, 553 F.3d 1309, 1314-15 (10th Cir. 2009).

6 *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (citations omitted); *see, e.g., United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015).

7 *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir.1993) (quotation omitted).

8 *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010).

9 *See Lambert*, 995 F.2d at 1007.

10 *See* § 2:26. Corporate criminal liability, Corp. Compl. Series: FCPA § 2:26 (2022-2023).

fair chance to make this determination of intent, they will need to hear all the relevant and admissible contextual clues that are available. The jury will especially need to know that (a) on April 3, 2020, when Mr. Lucas submitted his PPP-Loan application and represented that he had not been convicted of a felony in the last five years, he had actually been convicted of a felony just four years and one month before; and (b) when Mr. Lucas submitted his EIDL-Loan application on the same day (April 3, 2020) and represented that for anything other than a minor vehicle violation, he had *never* been convicted of any crime—ever—he already had been convicted of 8 felonies and 12 misdemeanors, none of which were minor vehicle violations.

Without this critical context of Mr. Lucas's extensive pre-loan-application criminal history, the jury cannot be expected to properly assess, let alone understand, Mr. Lucas's fraudulent intent in misrepresenting his criminal history on the loan applications.

    **4.2**     **Alternatively, Mr. Lucas's prior bad acts (namely, his pre-loan-application criminal convictions) are classic Rule 404(b) evidence and should be admitted as such.**

As noted above, the Court should allow the United States to introduce, in its case-in-chief, the identified evidence regarding Mr. Lucas's criminal history (namely, the fact that he had already accumulated 8 felony and 12 misdemeanor convictions before he applied for his PPP- and EIDL Loans), because this evidence is intrinsic to the wire fraud charges against Mr. Lucas. However, were the Court to determine that this evidence was not intrinsic to the charges against Mr. Lucas, the Court should still allow the United States to introduce the evidence under Rule 404(b).

/ / /

/ / /

/ / /

> **4.2.1 The evidence that Mr. Lucas already had been convicted of 8 felonies and 12 misdemeanors—none of which were minor vehicle violations—when he falsely claimed to have no such criminal history is classic Rule 404(b) evidence because it tends to show that he knowingly and intentionally lied about his criminal history on his loan applications.**

As Rule 404(b) evidence, the United States intends to introduce at trial the above-identified evidence that (a) before April 3, 2020, when Mr. Lucas applied for the PPP- and EIDL-Loans at issue, he already had 8 felonies and at least 12 misdemeanors—none of which felonies or misdemeanors qualified as a minor vehicle violation, and (b) one of Mr. Lucas's pre-loan-application felonies had occurred within 5 years of his April 3, 2020 PPP Loan application.

This evidence is quintessential 404(b) evidence because it tends to show that Mr. Lucas intentionally misrepresented his criminal history when he submitted the PPP- and EIDL-Loan applications, and when he later requested a modification (or increase) of his EIDL-Loan amount. The fact that Mr. Lucas had such an extensive relevant criminal history (8 felonies and 12 misdemeanors) tends to show (overwhelmingly) that he knew he did not qualify for his PPP Loan, his EIDL Loan, or his EIDL Loan modification.

The extent and timing of Mr. Lucas's criminal history made it unlikely (if not impossible) for him not to have understood that he did not qualify for the loans for which he applied. On April 3, 2020, when he applied for the PPP Loan, he knew that he had been convicted of a felony (on March 10, 2016) within five years before he applied for the loan. Therefore, he knew he was lying when he answered on his loan application that he had not been convicted of a felony within the last five years. (*See* Ex. 1, 1-1). When he applied for tan EIDL Loan on the very same day (April 3, 2020), Mr. Lucas also knew that he already had been convicted of a criminal offense—other than a minor vehicle violation. In fact, he knew he had been convicted of at least 8 disqualifying

felonies and 12 disqualifying misdemeanors. Given his criminal history, Mr. Lucas had to know that he was lying on the loan applications when he answered "no" to the criminal history questions. Likewise, when he later signed his Amended Loan Authorization and Agreement to obtain an EIDL Loan modification (increase) and he recertified the truthfulness of his original EIDL Loan application, he still knew that he never qualified for the EIDL Loan in the first place.

### 4.2.2 Mr. Lucas's pre-loan-application criminal history is admissible under Rule 404(b) for several proper purposes.

Although Rule 404(b) prohibits use of evidence of other crimes, wrongs, or acts to "prove action in conformity therewith," evidence of Mr. Lucas's extensive pre-loan-application criminal history is relevant to proving his intent, his knowledge, his pattern of conduct (modus operandi/identity), and his absence of mistake or accident in relation to the charged crimes.

The Tenth Circuit has repeatedly held that evidence of other wrongs or acts are admissible for purposes of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[11] Several of these legitimate purposes are in play here.

In determining whether such evidence is admissible under Rule 404(b), the Tenth Circuit applies a four-part test identified in *Huddleston v. United States*, 485 U.S. 681, 691-92, (1988):

> (1) the evidence must be offered for one of the proper purposes articulated by Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the trial court, upon request, must instruct the jury to consider the evidence only for the purpose for which it was admitted, as required by Rule 105.[12]

---

11 *United States v. Mixon*, 185 F.3d 875 (10th Cir. 1999)(emphasis added)(citations omitted).

12 *See United States v. Wilson*, 107 F.3d 774, 782 (10th Cir. 1997); *United States v. Pickard*, 236 F. Supp. 2d 1204, 1211 (D. Kan. 2002).

The United States' produced evidence regarding Mr. Lucas meets this standard. Indeed, Mr. Lucas's intent to misrepresent his criminal history on his loan applications is at the heart of this case. By arguing that he had no such intent, Mr. Lucas will put the prior 404(b)-"criminal history" evidence directly at issue.[13] The United States anticipates that, at trial, the defendant will, in fact, argue that he did not intentionally misrepresent his criminal history on the loan applications. This will put his extensive criminal history squarely at issue.

### 4.2.2.1 The proposed "criminal history" evidence would be offered for several, proper and relevant reasons.

The proposed evidence regarding Mr. Lucas's disqualifying criminal history would only be offered under Fed. R. Evid. 404(b) for the following proper and relevant reasons:

**To Show Intent to Defraud**

First, the evidence regarding Mr. Lucas's extensive disqualifying criminal history is highly probative of his *intent* to defraud. The fact that Mr. Lucas was personally convicted of a felony within 4 years and 1 month before he applied for his PPP Loan tends to show that he intentionally lied on his PPP-Loan application when he represented that he had not been convicted of a felony within the last five years. Even more powerfully, the fact that Mr. Lucas had accumulated at least 8 felonies and 12 misdemeanors (none of them minor vehicle violations) before he applied for the EIDL Loan—on the same day that he applied for the PPP Loan—tends to show that he intentionally misrepresented his criminal history again, in order to obtain an EIDL Loan, when he represented that he had never had a criminal offense other than a minor vehicle violation.

---

13 *United States v. Thomas*, 58 F.3d 1318, 1321 (8th Cir. 1995); *see also Huddleston*, 485 U.S. at 685 ("Extrinsic evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."); *United States v. Vaughn*, 267 F.3d 653, 659 (10th Cir. 2001) (stating that the Tenth Circuit has repeatedly held it is proper to use other acts evidence to establish intent when defendant is charged with specific intent crime).

### To Show Knowledge

Second, the evidence regarding Mr. Lucas's disqualifying criminal history tends to show that Mr. Lucas had *knowledge* that he was misrepresenting his criminal history on the relevant loan applications and documents. Mr. Lucas would have been convicted in person. He would likely have been represented by counsel at each hearing. He would have received a sentence. For his felony convictions, he would have faced certain restrictions (on voting, gun ownership, etc.) that would be hard to forget. In fact, for his March 10, 2016 felony, Mr. Lucas not only had legal representation, but he also signed a plea agreement acknowledging and admitting to the felony conviction that disqualified him from obtaining a PPP Loan. Given his extensive criminal history and his status as an eight-time felon and at least a 12-time misdemeanant, when he submitted his loan documents, he would have known about and remembered his criminal history. Given Mr. Lucas's extensive criminal history and his personal knowledge of it, the jury would be permitted to infer that Mr. Lucas knowingly participated in a fraudulent scheme to obtain PPP- and EIDL-Loan funds by misrepresenting his criminal history on the relevant loan documents.

### To Show Identity (Pattern of Conduct)

Third, the evidence regarding Mr. Lucas's extensive criminal history tends to show his *identity* or pattern of conduct in misrepresenting his criminal history in order to obtain COVID-19 relief funds. The fact that Mr. Lucas misrepresented his criminal history twice . . . on the same day . . . on two separate loan applications . . . in response to two different criminal history questions strongly suggests that he had a pattern of misrepresenting his criminal history to obtain loan funds. The fact that he later recertified one of those misrepresentations about his criminal history when he applied for an EIDL Loan modification (increase) further cements the inference that this was

his modus operandi. Mr. Lucas's repeated misrepresentations of his criminal history, twice on the same day, and again months later, shows that Mr. Lucas had a pattern of conduct or modus operandi of lying about his criminal history to obtain loan funds.

### To Show Absence of Mistake or Accident

Fourth, the evidence regarding Mr. Lucas's extensive criminal history tends to show Mr. Lucas's *absence of mistake or accident*. The facts that Mr. Lucas made similar misrepresentations regarding his criminal history (or asserted lack thereof) on two, separate loan applications, on the very same day—and again later when seeking an EIDL Loan modification (or increase)—strongly suggest that he did not "mistakenly" or "accidentally" misrepresent his criminal history on his loan applications and documents. Rather, his characteristic and repeated misrepresentations regarding his extensive criminal history suggest that he knew he did not qualify for the loans he received and that he never mistakenly or accidentally denied having a disqualifying criminal history.

#### 4.2.2.2 The proposed "criminal history" evidence is relevant under Rule 402.

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. If relevant, evidence is admissible at trial—barring an enumerated exception. Fed. R. Evid. 402.14 Here, the proposed criminal history evidence is relevant under Rule 402 because

---

14 Federal Rule of Evidence 402 addresses the General Admissibility of Relevant Evidence. This rule provides that:

> ***Relevant evidence is admissible unless*** any of the following provides otherwise:
> the United States Constitution;
> a federal statute;
> these rules; or
> other rules prescribed by the Supreme Court.

Fed. R. Evid. 402 (emphasis added).

it is highly probative of the defendant's state of mind in a variety of ways. This state of mind—the defendant's intent—is a core element of the wire fraud charges against Mr. Lucas.

As noted above, in the Tenth Circuit, wire fraud charges require a showing that "the scheme [at issue] employed ***false or fraudulent pretenses, representations***, or promises that were material." 10th Cir. Crim. Pattern Jury Instr'n No. 2.57 (emphasis added). For the reasons identified above, Mr. Lucas's criminal history evidence tends to show that he intentionally made false representations regarding his criminal history on his loan applications to obtain loan funds. Because this evidence tends to prove a fact that is of consequence in determining the action—an element of the crimes charged against Mr. Lucas—the evidence is relevant. Fed. R. Evid. 402(b).

Nor is there any basis to exclude the evidence.

As noted above, this same evidence goes to show Mr. Lucas's intent to defraud, his knowledge, his identity, and his absence of mistake or accident. All of these purposes for introducing the evidence are relevant and proper. Therefore, the proffered Rule 404(b) evidence regarding Mr. Lucas's criminal history should come in.

### 4.2.2.3 The admission of the Rule 404(b) "criminal history" evidence would not *unfairly* prejudice Mr. Lucas.

The 404(b) evidence should also be admitted because it would not unfairly prejudice Mr. Lucas.[15] Indeed, "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." (emphasis added).[16]

---

[15] *See United States v. Hardwell*, 80 F.3d 1471, 1490 (10th Cir. 1996) (finding court did not abuse discretion by admitting 404(b) evidence that was relevant and had substantial probative value to issue of intent even though evidence was very prejudicial).

[16] *United States v. Burgess*, 576 F.3d 1078, 1098 (10th Cir. 2009) (citations omitted; and emphasis added).

Evidence is only *unfairly* prejudicial if "it will induce the jury to decide the case on an improper basis, rather than on the evidence presented."[17] Stated differently, to be unfair, the evidence must have the capacity to lure the fact finder into convicting on a "ground different from proof specific to the offense charged."[18] While the proposed evidence is prejudicial to the defendant (it tends to show his guilt), it is not *unfairly* so, and it makes a "legitimate contribution [to] the evidence."[19]

This "criminal history" evidence would only be considered by the jury for the reasons it is being offered—to prove the defendant's intent to defraud, his knowledge of his scheme, his identity (M.O.), and his absence of mistake or accident. These are all proper purposes of admission that would not unfairly prejudice the defendant. *See Huddleston*, 485 U.S. 681 at 691-92 (acknowledging these are proper purposes for admission).

### 4.2.2.4 The court may adequately instruct the jury to consider the 404(b) evidence for only the proper purposes identified above.

Finally, any unfair prejudice which might otherwise arise from use of the evidence at issue can be overcome by an instruction to the jury as to how it should be considered.[20] Such an instruction "can sufficiently protect a defendant's interest in being free from undue prejudice."[21]

/ / /

/ / /

---

17 *United States v. Miles*, 207 F.3d 988 (7th Cir. 2000); *see also Old Chief v. United States*, 519 U.S. 172 (1997).

18 *Old Chief*, 519 U.S. at 180; *United States v. Nichols*, 169 F.3d 1255, 1265 (10th Cir. 1999).

19 *See United States v. Patterson*, 20 F.3d 809, 814 (10th Cir. 1994).

20 *United States v. Vaughn, 267 F.3d 653*, 660 (7th Cir. 2001) (stating that limiting instructions are effective and proper in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence).

21 *United States v. Perholtz*, 842 F.2d 343, 361 (D.C. Cir. 1988).

5.      CONCLUSION

Mr. Lucas's pre-loan-application criminal history is admissible under Rule 404(b). This evidence is highly probative of whether Mr. Lucas possessed the requisite state of mind to merit conviction on all counts. The evidence properly goes to his intent, his knowledge, his identity, and his absence of mistake or accident in submitting fraudulent loan documents. Therefore, the Court should allow this Rule 404(b) evidence to be admitted in the United States' case-in-chief.

                                     Respectfully submitted,

                                     TRINA A. HIGGINS
                                     United States Attorney

                                     */s/ Todd C. Bouton*
                                     TODD C. BOUTON
                                     MARK Y. HIRATA
                                     Assistant United States Attorney

Exhibits 1-3 will be filed under seal.