TRINA A. HIGGINS, United States Attorney (#7349)
TODD C. BOUTON, Assistant United States Attorney (#17800)
SACHIKO J. JEPSON, Special Assistant United States Attorney (#17077)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
todd.bouton@usdoj.gov; sachiko.jepson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARTER LANE LUCAS,<br><br>Defendant. | Case No. 2:23-cr-00405 DBB<br><br>UNITED STATES' MOTION IN LIMINE NO. 2: TO PRECLUDE DEFENDANT FROM RAISING USE OF PPP-LOAN AND EIDL-LOAN FUNDS<br><br>Judge David Barlow |

Pursuant to Fed. R. Evid. 401-403, the United States files this Motion in Limine No. 2 to preclude Mr. Lucas and his counsel from raising or referencing any evidence or argument regarding how Mr. Lucas *used* the Paycheck Protection Program Loan ("PPP Loan") and Economic Injury Disaster Loan ("EIDL Loan") proceeds he fraudulently obtained.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE NO. 2**

1. **INTRODUCTION**

The United States has charged Mr. Lucas with wire fraud, alleging that he misrepresented his criminal history to fraudulently obtain about $182,800 in emergency loan funds that he did not qualify to receive. But for this motion, what is more important is that the United States has *not* charged Mr. Lucas with improper *use* of the fraudulently obtained loan funds.

Notwithstanding, defense counsel for Mr. Lucas has recently provided notice that they intend to present testimony at trial regarding how Mr. Lucas *used* his fraudulently obtained PPP- and EIDL-Loan funds. (ECF No. 49, at 2).[1] However, a breakdown of Mr. Lucas's *use* of these funds is not relevant to whether he *obtained* them fraudulently in the first place.

2. **AT TRIAL, MR. LUCAS SHOULD BE PRECLUDED FROM RAISING HIS USE OF THE PPP- AND EIDL-LOAN FUNDS**

A defendant should be precluded from raising improper legal defenses, to avoid confusing or prejudicing the jury or inviting jury nullification. Fed. R. Evid. 402, 403. In this case, the jury will be asked to determine whether Mr. Lucas committed wire fraud *when he obtained* PPP- and EIDL-Loan funds by representing in his responses to two separate criminal history questions (on the same day) that he did not have a disqualifying criminal history.[2] Wire fraud charges do not require proof that a defendant misused fraudulently obtained funds. They require the United States to show that the defendant engaged in a scheme to defraud or a scheme *to obtain* money or property

---

[1] Mr. Lucas has retained an expert witness, in part, to "testify regarding Mr. Lucas's use of the $17,000 in Paycheck Protection Program (PPP) loan proceeds . . . to pay his own payroll costs during the loan's 8-week covered period." The witness would also "testify about Mr. Lucas's use of proceeds from his Economic Injury Disaster Loan (EIDL) proceeds." (ECF No. 49 at 2).

[2] For wire fraud, the United States must prove that the defendant (1) devised or intended to devise a scheme to defraud, (2) acted with specific intent to defraud, (3) used or caused the use of interstate or foreign wire communications facilities, and (4) whether the scheme employed false or fraudulent pretenses, representations, or promises that were material. 10th Cir. Crim. Pattern Jury Instr'n No. 2.57.

by means of false or fraudulent pretenses, representations, or promises that were material. *United States v. Zar*, 790 F.3d 1036, 1049-50 (10th Cir. 2015). Likewise, in a false statement case under 18 U.S.C. § 1014, where the defendant was charged with fraudulently obtaining loan funds, the court found that "the defendant's specific plans regarding *what he will do with the funds* once he obtains them is *not* an element of the offense. [Th]ere the intended personal use allegations were merely surplusage and the prosecution did not have to prove them." *U.S. v. Smith*, 838 F.2d 436, 439-440 (10th Cir. 1988) (emphasis added). The same reasoning and logic applies here.

Mr. Lucas may attempt to show that he used PPP- and EIDL-Loan funds for payroll and working capital to argue that there was no *misuse*. The United States contends that there is no "appropriate" use for fraudulently obtained funds, other than to return them. More importantly, however, even if Mr. Lucas could show there was no misuse, this would have little if any probative value for a jury considering how he *obtained* the funds. "[A] scheme to defraud is not dependent on what someone intends to do or has done with the money or property acquired through the scheme. Instead, it is the scheme itself—the act of acquiring or attempting to acquire the funds through fraudulent means—that the statute punishes. *United States v. Robinson*, 99 F.4th 344, 355 (6th Cir. 2024).[3]

*Obtaining* funds and *using* funds are two distinct series of acts. Presenting a jury with evidence about Mr. Lucas's use of funds—Act 2—will not help them ascertain Mr. Lucas's criminal intent in obtaining those funds—Act 1. If Mr. Lucas somehow misunderstood two separate criminal history questions on two separate applications and inadvertently obtained funds

---

[3] *Robinson* cites to the Supreme Court case *McNally v. United States*, which states that "[i]nsofar as the sparse legislative history [regarding mail fraud] reveals anything, it indicates that the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property." 483 U.S. 350, 356 (1987) (superseded by statute). Tenth Circuit caselaw provides that "[i]nterpretations of § 1341 [mail fraud] are authoritative in interpreting parallel language in § 1343 [wire fraud]." *United States v. Lake*, 472 F.3d 1247, 1255 (10th Cir. 2007).

3

he was not qualified to receive, he could theoretically have intended to both properly *obtain* and properly *use* the funds. But it is just as plausible that he was *motivated* to make false representations on his loan applications *because* he wanted the funds for payroll and working capital. There is no form of *use* in Act 2 that sanitizes his criminal intent in Act 1.

### 3. CONCLUSION

The United States charged Mr. Lucas only for fraudulently *obtaining* emergency loan funds. Any evidence regarding his criminal intent (or lack thereof) to commit a second crime of misuse is irrelevant. Rather than assist the jury, it would lend to confusion, invite the jury to conflate the criminal intent for separate crimes, and plant a seed of improper jury nullification. Because any probative value of this evidence is substantially outweighed by a danger of unfair prejudice, confusion, misleading the jury, and wasting time, the Court should preclude it.

RESPECTFULLY SUBMITTED,

TRINA A. HIGGINS
United States Attorney


/s/ *Sachiko J. Jepson*
SACHIKO J. JEPSON
Special Assistant United States Attorney